FILED
JUL - 6 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# MOTION FOR APPOINTMENT OF COUNSEL

UNITED STATES FEDERAL
DISTRICT COURT WASHINGTION DC

Noha Charles Augustus
Petitioner
Vs
DAVID VENTURELLA
DIRECTOR HQ-PDU,
MICHAEL CHERTOFF
SECRETARY DEPARTMENT OF
HOMELAND SECURITY
ETAL RESPONDENTS

CASE NUMBER 1:05CV01362

JUDGE: Richard W. Roberts

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 07/06/2005

EMERGENCY MOTION FOR APPOINTMENT COUNSEL

1) Petitioner prays upon this honorable court to please appoint counsel, on his behalf.

2) etitioner is requesting oral argument, that would involve calling of witnesses, cross examinations because of the inherent complexity of this matter that would include compansatory and punttive, damages, a law proffesional would be better desposed as to the rueles and regulation of this ~~cort~~ Court. See Abdullah Vs Gunter, 949 F.2d 1032, 1035 (8th Cir 1991) cert denied 112 S.Ct 1995 (1992).

3) Petitioner states under penality of perjury that he is financially limited and cannot afford counsel.

4) Petitioner is an indigent plantiff with no legal training. The lack off has been cited in sister circuits t warrant appointment of counsel under the criminal justice Act. See emphasis added Whisenath Vs Yuam, 739 F.2d 160, 163 (4th Cir 1984) petitioner is in physical custody of department of Homeland security. With little or no access to legal materials see Rayes Vs Johson 169 F.2d 700, 703-04 (8th Cir 1992).

5) The legal complexity, and the large number of defendants coupled with the fact that petitioner is requesting a jury trial to be involved, in the punitive and compensatory deliberation.

6) There is merit in this matter, and a strong likelyhood for success. See Cooper Vs Sargenti Co, INC 877 F.2d 170, 173 (2nd Cir 1989).

6) Petitioner states and re-incorporates the issues reaised in items (1-5) and prays upon honorable court to appoint counsel in this matter.

[signature] 6/13/05

Respectfully submited
Noha Charles Augustus
18201 SW 12th St.
Miami, Fl 33194

66

**THE UNITED STATES**
**FEDERAL DISTRICT COURT**
**WASHINGTON, D.C.**

**EXHIBIT 1 OF 3 CONTINUED**

**NOHA CHARLES AUGUSTUS,**
**Petitioner,**

**VERSUS**

**DAVID VENTURELLA, Director HQ-PDU**
**MICHAEL CHERTOFF, Secretary, Dept of Homeland Security**
**FEDERAL REPUBLIC OF NIGERIA, ETAL**
**Respondents.**

______________________________/

NATIONAL 2

EXHIBIT

NATIONAL 2

110
38




(17) The term "immigration laws" includes this Act and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens.

(18) The term "immigration officer" means any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this Act or any section thereof.

(19) The term "ineligible to citizenship," when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat.76) [50 U.S.C. App. § 454], or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts.

[**Annotations**: Section 3(a) of the Selective Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844) was formerly classified to § 303 of Appendix to Title 50, War and National Defense, and was repealed or deleted as obsolete in 1955. Similarly, section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76) [see 50 USC App. § 454], too, was repealed.]

(20) The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

(21) The term "national" means a person owing permanent allegiance to a state.

(22) The term "national of the United States" means (A) a citizen of the United States, or (B) person who, though not a citizen of the United States, owes permanent allegiance to the United States.

(23) The term "naturalization" means the conferring of nationality of a state upon a person after birth, by any means whatsoever.

(24) [Repealed].[45]

(25) The term "noncombatant service" shall not include service in which the individual is not subject to military discipline, court martial, or does not wear the uniform of any branch of the armed forces.

(26) The term "nonimmigrant visa" means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this Act.

(27) The term "special immigrant" means –

(A) an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad;

(B) an immigrant who was a citizen of the United States and may, under section 324(a) or 327 of title III, apply for reacquisition of citizenship;

[**Annotation**: Section 324(a) provides for regaining U.S. citizenship by former citizens. Section 327 deals with former U.S. citizens losing their citizenship by entering the armed forces of foreign countries during World War II.]

(C)[46] an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who –

(i) for at least 2 years immediately preceding the time of application for admission, has been a member

45 Paragraph (24) was repealed by § 305(m)(1) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. 102-232, 105 Stat. 1733, Dec. 12, 1991, effective as if included in § 407(d) of the Immigration Act of 1990, i.e., Nov. 29, 1990.

46 Subparagraph (C) was first revised, effective Oct. 1, 1991, by § 151 of the Immigration Act of 1990, Pub. L. 101-649, 104 Stat. 4978, Nov. 29, 1990. This special immigrant program for religious workers has been extended a number of times, see paragraph (u) below

## TITLE I—GENERAL

### DEFINITIONS

**SEC. 101. [8 USC § 1101]**

**SEC. 101(a) [8 USC § 1101(a)]**

(a) As used in this Act—

(1)[1] The term "administrator" means the Assistant Secretary of State for Consular Affairs.

(2) The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

(3) The term "alien" means any person not a citizen or national of the United States.

(4) The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

(5) The term "Attorney General" means the Attorney General of the United States.

(6)[2] The term "border crossing identification card" means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations. Such regulations shall provide that (A) each such document include a biometric identifier (such as the fingerprint or handprint of the alien) that is machine readable and (B) an alien presenting a border crossing identification card is not permitted to cross over the border into the United States unless the biometric identifier contained on the card matches the appropriate biometric characteristic of the alien.

(7) The term "clerk of court" means a clerk of a naturalization court.

(8) The terms "Commissioner" and "Deputy Commissioner" mean the Commissioner of Immigration and Naturalization and a Deputy Commissioner of Immigration and Naturalization, respectively.

(9)[3] The term "consular officer" means any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this Act, for the purpose of issuing immigrant or nonimmigrant visas or, when used in title III, for the purpose of adjudicating nationality.

(10) The term "crewman" means a person serving in any capacity on board a vessel or aircraft.

(11) The term "diplomatic visa" means a nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe.

(12) The term "doctrine" includes, but is not limited to, policies, practices, aims, or procedures.

(13)[4](A) The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

(B) An alien who is paroled under section 212(d)(5) or permitted to land temporarily as an alien crewman shall not be considered to have been admitted.

[**Annotation:** Section 212(d)(5) provides that the Attorney General may parole an alien temporarily on a case-by-case basis for urgent humanitarian reasons or significant public benefit until the purpose of such parole is served.]

---

1 Paragraph (1) was amended by sec. 109(b) of the Refugee Act of 1980, Pub L. 95-105, 91 Stat. 846, Mar. 17, 1980.

2 Section 101(a)(6) was amended by § 104 of IIRIRA, Pub L. 104-208, 110 Stat. 3009, Sept. 30, 1996. As to the amendment's effective date, Clause (A) "shall apply to documents issued on or after 18 months after the date of the enactment of IIRIRA," and Clause (B) "shall apply to cards presented on or after 3 years" after the date of its enactment.

3 Paragraph (9) was amended by § 2222 of Pub L. 105-277, 112 Stat. 2681, Oct. 21, 1998.

4 Section 101(a)(13) was amended, to completely modify the concept of "entry", by § 301(a) of IIRIRA, Pub L. 104-208, 110 Stat. 3009, Sept. 30, 1996, effective April 1, 1997, pursuant to § 309 of such Act.

least 12 years,

and the spouse or child of any such immigrant if accompanying or following to join the immigrant, but only if the executive department under which the immigrant serves or served recommends the granting of special immigrant status to the immigrant;

(L)[60] an immigrant who would be described in clause (i), (ii), (iii), or (iv) of subparagraph (I) if any reference in such a clause —

(i) to an international organization described in paragraph (15)(G)(i) were treated as a reference to the North Atlantic Treaty Organization (NATO);

(ii) to a nonimmigrant under paragraph (15)(G)(iv) were treated as a reference to a nonimmigrant classifiable under NATO-6 (as a member of a civilian component accompanying a force entering in accordance with the provisions of the NATO Status-of-Forces Agreement, a member of a civilian component attached to or employed by an Allied Headquarters under the "Protocol on the Status of International Military Headquarters" set up pursuant to the North Atlantic Treaty, or as a dependent); and

(iii) to the Immigration Technical Corrections Act of 1988 or to the Immigration and Nationality Technical Corrections Act of 1994 were a reference to the American Competitiveness and Workforce Improvement Act of 1998;

(M)[61] subject to the numerical limitations of section 203(b)(4), an immigrant who seeks to enter the United States to work as a broadcaster in the United States for the International Broadcasting Bureau of the Broadcasting Board of Governors, or for a grantee of the Broadcasting Board of Governors, and the immigrant's accompanying spouse and children.

[**Annotation**: Section 203(b)(4) provides for the availability of visas for certain "special immigrants", except for lawful permanent residents returning from a temporary visit abroad and former U.S. citizens applying for reacquisition of citizenship, and specifies caps on visas for religious workers and certain broadcasters.]

(28) The term "organization" means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects.

(29) The term "outlying possessions of the United States" means American Samoa and Swains Island.

(30) The term "passport" means any travel document issued by competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country.

(31) The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.

(32)[62] The term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries.

(33) The term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.

(34) The term "Service" means the Immigration and Naturalization Service of the Department of Justice.

(35) The term "spouse," "wife," or "husband" does not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each

---

60 Subparagraph (L) of § 101(a)(27) was added by § 421(a) of the American Competitiveness and Workforce Improvement Act of 1998, Pub.L. 105-277, 112 Stat. 2681, Oct. 21, 1998.

61 Subparagraph (M) of § 101(a)(27) was added by § 1(a) of Pub.L. 106-536, 114 Stat. 2560, Nov. 22, 2000.

62 The term "profession" was substituted for the term "quota immigrant" by sec. 8(b) of Pub. L. 89-236, 79 Stat. 917, Oct. 3, 1965.

section 313: Provided, That nothing contained herein or in any other provision of law shall be construed as conferring United States citizenship retroactively upon such person, or upon any person who was naturalized in accordance with the provisions of section 317(b) of the Nationality Act of 1940, during any period in which such person was not a citizen.

[**Annotation:** Section 317(b) of the Nationality Act of 1940, repealed by § 403(a) of the INA, is now covered by subsection (c) of this section.]

(2) Such oath of allegiance may be taken abroad before a diplomatic or consular officer of the United States, or in the United States before the Attorney General or the judge or clerk of a court described in section 310(b).

(3) Such oath of allegiance shall be entered in the records of the appropriate embassy, legation, consulate, court, or the Attorney General, and upon demand, a certified copy of the proceedings, including a copy of the oath administered, under the seal of the embassy, legation, consulate, court, or the Attorney General, shall be delivered to such woman at a cost not exceeding $5, which certified copy shall be evidence of the facts stated therein before any court of record or judicial tribunal and in any department or agency of the Government of the United States.

### SEC. 324(d) [8 USC § 1435(d)]

(d)[613](1) A person who was a citizen of the United States at birth and lost such citizenship for failure to meet the physical presence retention requirements under section 301(b) (as in effect before October 10, 1978), shall, from and after taking the oath of allegiance required by section 337 be a citizen of the United States and have the status of a citizen of the United States by birth, without filing an application for naturalization, and notwithstanding any of the other provisions of this title except the provisions of section 313. Nothing in this subsection or any other provision of law shall be construed as conferring United States citizenship retroactively upon such person during any period in which such person was not a citizen.

(2) The provisions of paragraphs (2) and (3) of subsection (c) shall apply to a person regaining citizenship under paragraph (1) in the same manner as they apply under subsection (c)(1).

[**Annotations:** For a Historical Note to Section 301, see APPENDIX XII in this Book.
Section 313 prohibits naturalization of persons who are opposed to government or law, or who favor totalitarian form of government.]

## NATIONALS BUT NOT CITIZENS OF THE UNITED STATES; RESIDENCE WITHIN OUTLYING POSSESSIONS[614]

### SEC. 325. [8 USC § 1436]

A person not a citizen who owes permanent allegiance to the United States, and who is otherwise qualified, may, if he becomes a resident of any State, be naturalized upon compliance with the applicable requirements of this title, except that in applications for naturalization filed under the provisions of this section residence and physical presence within the United States within the meaning of this title shall include residence and physical presence within any of the outlying possessions of the United States.

613 Subsection (d) of § 324 was added by § 103(a) of Pub L. 103-416, 108 Stat 4305, Oct. 25, 1994, to "take effect on the first day of the first month beginning more than 120 days after the date of the enactment of this Act. [March 1, 1995]"

614 Section 325 was amended by § 407(c) of the Immigration Act of 1990, Pub L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

least 12 years,

and the spouse or child of any such immigrant if accompanying or following to join the immigrant, but only if the executive department under which the immigrant serves or served recommends the granting of special immigrant status to the immigrant;

(L)[60] an immigrant who would be described in clause (i), (ii), (iii), or (iv) of subparagraph (I) if any reference in such a clause –

(i) to an international organization described in paragraph (15)(G)(i) were treated as a reference to the North Atlantic Treaty Organization (NATO);

(ii) to a nonimmigrant under paragraph (15)(G)(iv) were treated as a reference to a nonimmigrant classifiable under NATO-6 (as a member of a civilian component accompanying a force entering in accordance with the provisions of the NATO Status-of-Forces Agreement, a member of a civilian component attached to or employed by an Allied Headquarters under the "Protocol on the Status of International Military Headquarters" set up pursuant to the North Atlantic Treaty, or as a dependent); and

(iii) to the Immigration Technical Corrections Act of 1988 or to the Immigration and Nationality Technical Corrections Act of 1994 were a reference to the American Competitiveness and Workforce Improvement Act of 1998;

(M)[61] subject to the numerical limitations of section 203(b)(4), an immigrant who seeks to enter the United States to work as a broadcaster in the United States for the International Broadcasting Bureau of the Broadcasting Board of Governors, or for a grantee of the Broadcasting Board of Governors, and the immigrant's accompanying spouse and children.

[**Annotation:** Section 203(b)(4) provides for the availability of visas for certain "special immigrants", except for lawful permanent residents returning from a temporary visit abroad and former U.S. citizens applying for reacquisition of citizenship, and specifies caps on visas for religious workers and certain broadcasters.]

(28) The term "organization" means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects.

(29) The term "outlying possessions of the United States" means American Samoa and Swains Island.

(30) The term "passport" means any travel document issued by competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country.

(31) The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.

(32)[62] The term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries.

(33) The term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.

(34) The term "Service" means the Immigration and Naturalization Service of the Department of Justice.

(35) The term "spouse," "wife," or "husband" does not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each

60 Subparagraph (L) of § 101(a)(27) was added by § 421(a) of the American Competitiveness and Workforce Improvement Act of 1998, Pub. L. 105-277, 112 Stat. 2681, Oct. 21, 1998.

61 Subparagraph (M) of § 101(a)(27) was added by § 1(a) of Pub. L. 106-536, 114 Stat. 2560, Nov. 22, 2000.

62 The term "profession" was substituted for the term "quota immigrant" by sec. 8(b) of Pub. L. 89-236, 79 Stat. 917, Oct. 3, 1965.

NATIONAL 2

brought before it on their merits, or remand the matter to the Service with appropriate instructions.

(b) *After denial of an application.* After an application for naturalization is denied following a hearing before a Service officer pursuant to section 336(a) of the Act, the applicant may seek judicial review of the decision pursuant to section 310 of the Act.

## PART 312—EDUCATIONAL REQUIREMENTS FOR NATURALIZATION

Sec.
312.1 Literacy requirements.
312.2 Knowledge of history and government of the United States.
312.3 Standardized citizenship testing.
312.4 Selection of interpreter.
312.5 Failure to meet educational and literacy requirements.

AUTHORITY: 8 U.S.C. 1103, 1423, 1443, 1447, 1448.

SOURCE: 56 FR 50481, Oct. 7, 1991, unless otherwise noted.

### § 312.1 Literacy requirements.

(a) *General.* Except as otherwise provided in paragraph (b) of this section, no person shall be naturalized as a citizen of the United States upon his or her own application unless that person can demonstrate an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language.

(b) *Exceptions.* The following persons need not demonstrate an ability to read, write and speak words in ordinary usage in the English language:

(1) A person who, on the date of filing of his or her application for naturalization, is over 50 years of age and has been living in the United States for periods totalling at least 20 years subsequent to a lawful admission for permanent residence;

(2) A person who on the date of filing his or her application for naturalization, is over 55 years of age and has been living in the United States for periods totalling at least 15 years subsequent to a lawful admission for permanent residence; or

(3) The requirements of paragraph(a) of this section shall not apply to any person who is unable, because of a medically determinable physical or mental impairment or combination of impairments which has lasted or is expected to last at least 12 months, to demonstrate an understanding of the English language as noted in paragraph (a) of this section. The loss of any cognitive abilities based on the direct effects of the illegal use of drugs will not be considered in determining whether a person is unable to demonstrate an understanding of the English language. For purposes of this paragraph, the term *medically determinable* means an impairment that results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques to have resulted in functioning so impaired as to render an individual unable to demonstrate an understanding of the English language as required by this section, or that renders the individual unable to fulfill the requirements for English proficiency, even with reasonable modifications to the methods of determining English proficiency, as outlined in paragraph(c) of this section.

(c) *Literacy examination*—(1) *Verbal skills.* The ability of an applicant to speak English shall be determined by a designated examiner from the applicant's answers to questions normally asked in the course of the examination.

(2) *Reading and writing skills.* Except as noted in § 312.3, an applicant's ability to read and write English shall be tested using excerpts from one or more parts of the Service authorized Federal Textbooks on Citizenship written at the elementary literacy level. Service publications M-289 and M-291. These textbooks may be purchased from the Superintendent of Documents, Government Printing Office, Washington, DC 20402, and are available at certain public educational institutions. An applicant's writing sample shall be retained in the applicant's Service file.

[56 FR 50481, Oct. 7, 1991, as amended at 62 FR 12923, Mar. 19, 1997; 62 FR 15751, Apr. 2, 1997; 64 FR 7993, Feb. 18, 1999]

renounce Danish citizenship, in accordance with the instructions contained therein. The applicant shall be notified in writing when and where to appear before a representative of the Service for examination as to his eligibility to renounce Danish citizenship and for assistance in filing the renunciation.

**§ 306.12 Renunciation forms; disposition.**

The renunciation shall be made and executed by the applicant under oath, in duplicate, on Form N–351 and filed in the office of the clerk of court. The usual procedural requirements of the Immigration and Nationality Act shall not apply to proceedings under this part. The fee shall be fixed by the court or the clerk thereof in accordance with the law and rules of the court, and no accounting therefor shall be required to be made to the Service. The clerk shall retain the original of Form N–351 as the court record and forward the duplicate to the district director exercising administrative naturalization jurisdiction over the area in which the court is located.

## PART 310—NATURALIZATION AUTHORITY

Sec.
310.1 Administrative naturalization authority.
310.2 Jurisdiction to accept applications for naturalization.
310.3 Administration of the oath of allegiance.
310.4 Judicial naturalization authority and withdrawal of petitions.
310.5 Judicial review.

AUTHORITY: 8 U.S.C. 1103, 1421, 1443, 1447, 1448; 8 CFR 2.

SOURCE: 56 FR 50480, Oct. 7, 1991, unless otherwise noted.

**§ 310.1 Administrative naturalization authority.**

(a) *Attorney General.* Commencing October 1, 1991, section 310 of the Act confers the sole authority to naturalize persons as citizens of the United States upon the Attorney General.

(b) *Commissioner of the Immigration and Naturalization Service.* Pursuant to § 2.1 of this chapter, the Commissioner of the Immigration and Naturalization Service is authorized to perform such acts as are necessary and proper to implement the Attorney General's authority under the provisions of section 310 of the Act.

**§ 310.2 Jurisdiction to accept applications for naturalization.**

The Service shall accept an application for naturalization from an applicant who is subject to a continuous residence requirement under section 316(a) or 319(a) of the Act as much as three months before the date upon which the applicant would otherwise satisfy such continuous residence requirement in the State or Service district where residence is to be established for naturalization purposes. At the time of examination on the application, the applicant will be required to prove that he or she satisfies the residence requirements for the residence reflected in the application.

**§ 310.3 Administration of the oath of allegiance.**

(a) An applicant for naturalization may elect, at the time of filing of, or at the examination on, the application, to have the oath of allegiance and renunciation under section 337(a) of the Act administered in a public ceremony conducted by the Service or by any court described in section 310(b) of the Act, subject to section 310(b)(1)(B) of the Act.

(b) The jurisdiction of all such courts specified to administer the oath of allegiance shall extend only to those persons who are resident within the respective jurisdictional limits of such courts, except as otherwise provided in section 316(f)(2) of the Act. Persons who temporarily reside within the jurisdictional limits of a court in order to pursue an application properly filed pursuant to section 319(b), 328(a), or 329 of the Act or section 405 of the Immigration Act of 1990 are not subject to the exclusive jurisdiction provisions of section 310(b)(1)(B) of the Act.

(c)(1) A court that wishes to exercise exclusive jurisdiction to administer the oath of allegiance for the 45-day period specified in section 310(b)(1)(B) of the Act shall notify, in writing, the district director of the Service office having jurisdiction over the place in

which the court is locat court's intent to exercise sive jurisdiction.

(2) At least 60 days prior t ing of any oath administr mony referred to in § 337.8 o ter, the clerk of court shal ten notice to the appropri director of the time, date, a such ceremony and of the persons who may be accomm

(d) A court that has n Service pursuant to paragra this section shall have ex thority to administer the o giance to persons residing jurisdiction for a period of ginning on the date that t notifies the clerk of court of cant's eligibility for natu Such exclusive authority sha tive only if on the date the tifies the clerk of court of cant's eligibility, the court h the Service of the day or d such 45-day period on which has scheduled oath admi ceremonies available to the The Service must submit th tion of the applicant's eligibi clerk of court within 10 days proval of the application pu § 337.8 of this chapter.

(e) *Waiver of exclusive au* court exercising exclusive au administer the oath of alleg suant to paragraph (c) of th may waive such exclusive when it is determined by the the Service failed to notify within a reasonable time p scheduled oath ceremony of cant's eligibility such that practical for the applicant to a that ceremony. The court sha the district director in writing waiver of exclusive authority lates to a specific applicant, an Service shall promptly notify th plicant. The Service shall then ar for the administration of the oa allegiance pursuant to § 337.2 of chapter.

[58 FR 49911, Sept. 24, 1993, as amended FR 32144, June 13, 2001]

determines that an inaccurate or incomplete record of the examination would result if the examination on technical or complex issues were conducted in English. In such a case the examination may be conducted in the applicant's native language, with the assistance of an interpreter selected in accordance with §312.4;

(iii) The applicant has met the requirements of §312.3.

(2) *Scope and substance.* The scope of the examination shall be limited to subject matters covered in the Service authorized Federal Textbooks on Citizenship except for the identity of current officeholders. In choosing the subject matters, in phrasing questions and in evaluating responses, due consideration shall be given to the applicant's education, background, age, length of residence in the United States, opportunities available and efforts made to acquire the requisite knowledge, and any other elements or factors relevant to an appraisal of the adequacy of the applicant's knowledge and understanding.

(Approved by the Office of Management and Budget under control number 1115–0208)

[56 FR 50481, Oct. 7, 1991, as amended at 58 FR 49912, Sept. 24, 1993; 62 FR 12923, Mar. 19, 1997; 62 FR 15751, Apr. 2, 1997; 64 FR 7993, Feb. 18, 1999]

### §312.3 Standardized citizenship testing.

(a)(1) An applicant for naturalization may satisfy the reading and writing requirements of §312.1 and the knowledge requirements of §312.2 by passing, within one (1) year preceding the date on which he or she files an application for naturalization, or at any time subsequent to filing an application but prior to a final determination on the application, a standardized citizenship test given by an entity authorized by the Service to conduct such a test.

(2) The applicant must still demonstrate his or her ability to speak and understand English in accordance with §312.1(c)(1). An applicant who passes a standardized citizenship test may submit evidence of passage of the test either with the submission of the application, at the examination on the application, or at the time of the second examination provided in §312.5(a). Any evidence of passage submitted by the applicant shall be subject to independent verification by the Service with the test provider.

(3) An applicant who passes a standardized citizenship test as provided in paragraph (a)(1) of this section for naturalization shall not be reexamined at the Service naturalization interview on his or her ability to read and write English or on his or her knowledge of the history and form of government of the United States, unless the examining officer has reasonable cause to believe, subsequent to verification of the applicant's test results with the authorized testing entity, that the applicant's test results were obtained through fraud or misrepresentation. The Applicant's inability to speak English may not be the sole reason for finding that the test results were obtained through fraud or misrepresentation. A written record of the officer's determination shall be made in the record of the application including the response from the testing entity concerning the applicant's test.

(4) An applicant who has failed a standardized citizenship test will not be prejudiced by that failure during an examination conducted by the Service under §§312.1 and 312.2, and may continue to pursue the application with the Service as if the applicant had never taken the standardized test.

(b) An applicant who has obtained lawful permanent resident alien status pursuant to section 245A of the Act, and who, at that time demonstrated English language proficiency in reading and writing, and knowledge of the government and history of the United States through either an examination administered by the Service or a standardized section 312 test authorized by the Service for use with Legalization applicants as provided in section 245A(*b*)(1)(D)(iii) of the Act, will not be reexamined on those skills at the time of the naturalization interview. However, such applicant must still establish eligibility for naturalization through testimony in the English language.

[56 FR 50481, Oct. 7, 1991, as amended at 58 FR 49912, Sept. 24, 1993; 60 FR 6651, Feb. 3, 1995]

**§312.4 Selection of inte**

An interpreter to be u
may be selected either b
or by the Service. Howe
reserves the right to di
terpreter provided by th
order to ensure the inte
amination. Where the Se
fies an interpreter, the
provide another interpre
plicant in a timely mann
uling of the interview is
a new date shall be set as
ticable so as not to dela
adjudication of the applic
ficer who disqualifies a
shall make a written reco
son(s) for disqualification
record of the application.

[60 FR 6651, Feb. 3, 1995]

**§312.5 Failure to meet and literacy requireme**

(a) An applicant for na
who fails the English lite
tory and government test
examination will be afford
opportunity to pass the te
90 days after the first exam
ing the pendency of the appl

(b) If an applicant who r
tice of the second schedule
tion date fails to appear wi
cause for that second e
without prior notification t
ice, the applicant will be
have failed this second ex
Before an applicant may
postponement of the second
tion to a date that is more th
after the initial examinatio
plicant must agree in writin
the requirement under sect
the Act that the Service mus
determination on the applica
in 120 days from the initial
and instead to permit the S
render a decision within 120
the second interview.

[56 FR 50481, Oct. 7, 1991, as amend
49912, Sept. 24, 1993]

### § 315.1 Definitions.

As used in this part:

*Exemption from military service* means either:

(1) A permanent exemption from induction into the Armed Forces or the National Security Training Corps of the United States for military training or military service; or

(2) The release or discharge from military training or military service in the Armed Forces or in the National Security Training Corps of the United States.

*Induction* means compulsory entrance into military service of the United States whether by conscription or, after being notified of a pending conscription, by enlistment.

*Treaty national* means an alien who is a national of a country with which the United States has a treaty relating to the reciprocal exemption of aliens from military training or military service.

### § 315.2 Ineligibility and exceptions.

(a) *Ineligibility.* Except as provided in paragraph (b) of this section, any alien who has requested, applied for, and obtained an exemption from military service on the ground that he or she is an alien shall be ineligible for approval of his or her application for naturalization as a citizen of the United States.

(b) *Exceptions.* The prohibition in paragraph (a) of this section does not apply to an alien who establishes by clear and convincing evidence that:

(1) At the time that he or she requested an exemption from military service, the applicant had no liability for such service even in the absence of an exemption;

(2) The applicant did not request or apply for the exemption from military service, but such exemption was automatically granted by the United States government;

(3) The exemption from military service was based upon a ground other than the applicant's alienage.

(4) In claiming an exemption from military service, the applicant did not knowingly and intentionally waive his or her eligibility for naturalization because he or she was misled by advice from a competent United States government authority, or from a competent authority of the government of his or her country of nationality, of the consequences of applying for an exemption from military service and was, therefore, unable to make an intelligent choice between exemption and citizenship;

(5) The applicant applied for and received an exemption from military service on the basis of alienage, but was subsequently inducted into the Armed Forces, or the National Security Training Corps, of the United States; however, an applicant who voluntarily enlists and serves in the Armed Forces of the United States, after applying for and receiving an exemption from military service on the basis of alienage, does not satisfy this exception to paragraph (a) of this section;

(6) Prior to requesting the exemption from military service:

(i) The applicant was a treaty national who had served in the armed forces of the country of which he or she was a national; however, a treaty national who did not serve in the armed forces of the country of nationality prior to requesting the exemption from military service does not satisfy this exception to paragraph (a) of this section;

(ii) The applicant served a minimum of eighteen months in the armed forces of a nation that was a member of the North Atlantic Treaty Organization at the time of the applicant's service; or

(iii) The applicant served a minimum of twelve months in the armed forces of a nation that was a member of the North Atlantic Treaty Organization at the time of the applicant's service, provided that the applicant applied for registration with the Selective Service Administration after September 28, 1971; or

(7) The applicant is applying for naturalization pursuant to section 329 of the Act.

### § 315.3 Evidence.

(a) The records of the Selective Service System and the military department under which the alien served shall be conclusive evidence of whether the alien was relieved or discharged from liability for military service because he or she was an alien

(b) The regula
Service Adminis
cessors will be c
to the requireme
liability for, se
Forces of the Uni

§ 315.4 Exemptio

(a) The followir
have effective tre
rocal exemption
tary service:

Argentina (Art. X.
tive 1853)
Austria (Art. VI. 47
1928)
China (Art. XIV. 63
1946)
Costa Rica (Art. IX.
tive 1851)
Estonia (Art. VI. 44 S
1925)
Honduras (Art. VI. 4
tive 1927)
Ireland (Art. III, 1 US
Italy (Art. XIII. 63 S
1948)
Latvia (Art. VI, 45 St
1928)
Liberia (Art. VI, 54 St
1938)
Norway (Art. VI, 47 St
1928)
Paraguay (Art. XI, 12
tive 1859)
Spain (Art. V, 33 Stat
1902)
Switzerland (Art. II. 1
tive 1850)
Yugoslavia (Serbia) (Ar
effective 1881)

(b) The followin
viously had treaties
ciprocal exemption o
tary service:

El Salvador (Art. VI, 46
tive 1926 to February 8
Germany (Art. VI, 44 St
tive 1923 to June 2, 1954
Hungary (Art. VI, 44 Stat
1925 to July 5, 1952)
Thailand (Siam) (Art. 1
effective 1937 to June 8,

PART 316—GENER
MENTS FOR NATUR

Sec.
316.1 Definitions.
316.2 Eligibility.
316.3 Jurisdiction.
316.4 Application, documents.

    to cover an absence from the United States for a continuous period of one year or more shall be submitted to the Service on Form N-470 with the required fee, in accordance with the form's instructions. The application may be filed either before or after the applicant's employment commences, but must be filed before the applicant has been absent from the United States for a continuous period of one year.

(ii) An approval of Form N-470 under section 316(b) of the Act shall cover the spouse and dependent unmarried sons and daughters of the applicant who are residing abroad as members of the applicant's household during the period covered by the application. The notice of approval, Form N-472, shall identify the family members so covered.

(iii) An applicant whose Form N-470 application under section 316(b) of the Act has been approved, but who voluntarily claims nonresident alien status to qualify for special exemptions from income tax liability, raises a rebuttable presumption that the applicant has relinquished a claim of having retained lawful permanent resident status while abroad. The applicant's family members who were covered under section 316(b) of the Act and who were listed on the applicant's Form N-472 will also be subject to the rebuttable presumption that they have relinquished their claims to lawful permanent resident status.

(2) *Preservation of residence under section 317 of the Act.* An application for the residence and physical presence benefits of section 317 of the Act to cover any absences from the United States, whether before or after December 24, 1952, shall be submitted to the Service on Form N-470 with the required fee, in accordance with the form's instructions. The application may be filed either before or after the applicant's absence from the United States or the performance of the functions or services described in section 317 of the Act.

(3) *Approval, denial, and appeal.* The applicant under paragraphs (d)(1) or (2) of this section shall be notified of the Service's disposition of the application on Form N-472. If the application is denied, the Service shall specify the reasons for the denial, and shall inform the applicant of the right to appeal in accordance with the provisions of part 103 of this chapter.

[56 FR 50484, Oct. 7, 1991, as amended at 56 FR 50487, Oct. 7, 1991; 58 FR 49913, Sept. 24, 1993; 60 FR 6651, Feb. 3, 1995; 62 FR 10394, Mar. 6, 1997]

## §§316.6–316.9 [Reserved]

## §316.10 Good moral character.

(a) *Requirement of good moral character during the statutory period.* (1) An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance.

(2) In accordance with section 101(f) of the Act, the Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence. The Service is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character.

(b) *Finding of a lack of good moral character.* (1) An applicant shall be found to lack good moral character, if the applicant has been:

(i) Convicted of murder at any time; or

(ii) Convicted of an aggravated felony as defined in section 101(a)(43) of the Act on or after November 29, 1990.

(2) An applicant shall be found to lack good moral character if during the statutory period the applicant:

(i) Committed one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted, except as specified in section 212(a)(2)(ii)(II) of the Act;

(ii) Committed two or more offenses for which the applicant was convicted and the aggregate sentence actually imposed was five years or more, provided that, if the offense was committed outside the United States, it was not a purely political offense;

(iii) Violated any law of the United States, any State, or any foreign country relating to a controlled substance, provided that the violation was not a single offense for simple possession of 30 grams or less of marijuana;

(iv) Admits committing any criminal act covered by paragraphs (b)(2) (i), (ii), or (iii) of this section for which there was never a formal charge, indictment, arrest, or conviction, whether committed in the United States or any other country;

(v) Is or was confined to a penal institution for an aggregate of 180 days pursuant to a conviction or convictions (provided that such confinement was not outside the United States due to a conviction outside the United States for a purely political offense);

(vi) Has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit;

(vii) Is or was involved in prostitution or commercialized vice as described in section 212(a)(2)(D) of the Act;

(viii) Is or was involved in the smuggling of a person or persons into the United States as described in section 212(a)(6)(E) of the Act;

(ix) Has practiced or is practicing polygamy;

(x) Committed two or more gambling offenses for which the applicant was convicted;

(xi) Earns his or her income principally from illegal gambling activities; or

(xii) Is or was a habitual drunkard.

shall at the request of the petitioner, conduct a hearing de novo on the application.

[Annotation: Section 336(a) provides for a hearing before an immigration officer on a denial of application for naturalization.]

**SEC. 310(d) [8 USC § 1421(d)]**

(d) *Sole Procedure.*—A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this title and not otherwise.

## ELIGIBILITY FOR NATURALIZATION

**SEC. 311. [8 USC § 1422]**

The right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race or sex or because such person is married.

## REQUIREMENTS AS TO UNDERSTANDING THE ENGLISH LANGUAGE, HISTORY, PRINCIPLES, AND FORM OF GOVERNMENT OF THE UNITED STATES[588]

**SEC. 312. [8 USC § 1423]**

**SEC. 312(a) [8 USC § 1423(a)]**

(a) No person except as otherwise provided in this title shall hereafter be naturalized as a citizen of the United States upon his own application who cannot demonstrate—

(1) an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language: Provided,[589] That the requirements of this paragraph relating to ability to read and write shall be met if the applicant can read or write simple words and phrases to the end that a reasonable test of his literacy shall be made and that no extraordinary or unreasonable condition shall be imposed upon the applicant; and

(2) a knowledge and understanding of the fundamentals of the history, and of the principles and form of government, of the United States.

**SEC. 312(b) [8 USC § 1423(b)]**

(b)(1) The requirements of subsection (a) shall not apply to any person who is unable because of physical or developmental disability or mental impairment to comply therewith.

(2) The requirements of subsection (a)(1) shall not apply to any person who, on the date of the filing of the person's application for naturalization as provided in section 334, either—

(A) is over fifty years of age and has been living in the United States for periods totalling at least twenty years subsequent to a lawful admission for permanent residence, or

(B) is over fifty-five years of age and has been living in the United States for periods totaling at least fifteen years subsequent to a lawful admission for permanent residence.

(3) The Attorney General, pursuant to regulations,[590] shall provide for special consideration, as determined by

---

588 Section 312 was amended by § 305(m)(2) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991, effective as if included in § 407(d) the Immigration Act of 1990, i.e., Nov. 29, 1990. It was further amended to designate the existing provision as subsection (a) and adding subsection (b), by § 108 of Pub.L. 103-416, 108 Stat 4305, Oct. 25, 1994, to apply to new applications for naturalization as well as to those pending on the date of enactment of this Act.

589 This proviso was amended by Pub.L. 95-578, 92 Stat. 2474, Nov. 2, 1978. It was further amended by § 403 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

590 Section 108(d) of Pub.L. 103-416, 108 Stat 4305, Oct. 25, 1994, mandates that such regulations shall be promulgated "not later than 120 days after the date of enactment of this Act."

the Attorney General, concerning the requirement of subsection (a)(2) with respect to any person wh date of the filing of the person's application for naturalization as provided in section 334, is over sixty-f of age and has been living in the United States for periods totaling at least twenty years subsequent to admission for permanent residence.

## PROHIBITION UPON THE NATURALIZATION OF PERSONS OPPOSED TO GOVERNMENT OR LAW, OR WHO FAVOR TOTALITARIAN FORMS OF GOVERNMENT

**SEC. 313. [8 USC § 1424]**

**SEC. 313(a) [8 USC § 1424(a)]**

(a) Notwithstanding the provisions of section 405(b), no person shall hereafter be naturalized as a citize United States—

[**Annotation:** Section 405(b) declares that unless specifically provided otherwise, a petition for naturalization pending at the time thi takes effect shall be heard and determined under the law in effect when the petition was filed.]

(1) who advocates or teaches, or who is a member of or affiliated with any organization that advo teaches, opposition to all organized government; or

(2)[591] who is a member of or affiliated with (A) the Communist Party of the United States; (B) ar totalitarian party of the United States; (C) the Communist Political Association; (D) the Communist totalitarian party of any State of the United States, of any foreign state, or of any political or geogr subdivision of any foreign state; (E) any section, subsidiary, branch, affiliate, or subdivision of any such tion or party; or (F) the direct predecessors or successors of any such association or party, regardless name such group or organization may have used, may now bear, or may hereafter adopt,[592] unless su establishes that he did not have knowledge or reason to believe at the time he became a member of or a with such an organization (and did not thereafter and prior to the date upon which such organization registered or so required to be registered have such knowledge or reason to believe) that such organizatio Communist-front organization; or

(3)[593] who, although not within any of the other provisions of this section, advocates the economic, inter al, and governmental doctrines of world communism or the establishment in the United States of a tota dictatorship, or who is a member of or affiliated with any organization that advocates the economic, inter al, and governmental doctrines of world communism or the establishment in the United States of a total dictatorship, either through its own utterances or through any written or printed publications issued or pu by or with the permission or consent of or under authority of such organization or paid for by the funds organization; or

(4) who advocates or teaches or who is a member of or affiliated with any organization that advoc teaches (A) the overthrow by force or violence or other unconstitutional means of the Government of the States or of all forms of law; or (B) the duty, necessity, or propriety of the unlawful assaulting or killing officer or officers (either of specific individuals or officers generally) of the Government of the United St of any other organized government because of his or their official character; or (C) the unlawful damage, or destruction of property; or (D) sabotage; or

591 Paragraph (2) of section 313(a) was amended by § 219(v) of Pub.L. 103-416, 108 Stat 4305, Oct. 25, 1994, effective Dec. 12, 1991.

592 Clauses (G) and (H) were repealed by § 309(b)(13) of Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991. Said Clauses related to § 7 of th Subversive Activities Control Act of 1950, which was previously repealed in 1968.

593 Pursuant to section 103(c) of Pub.L. 103-199, 107 Stat. 2320, Dec. 17, 1993, Congress made a finding and affirmation that the provisions of this paragraph "should not be construed as being directed against Russia, Ukraine, or the other independent states of the former Soviet Union, connoting an adversarial relationship between the United States and the independent states, or signifying or implying in any manner unfriendliness toward the independent states."

(5) who writes or publishes or causes to be written or published, or who knowingly circulates, distributes, prints, or displays, or knowingly causes to be circulated, distributed, printed, published, or displayed, or who knowingly has in his possession for the purpose of circulation, publication, distribution, or display, any written or printed matter, advocating or teaching opposition to all organized government, or advocating (A) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law; or (B) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character; or (C) the unlawful damage, injury, or destruction of property; or (D) sabotage; or (E) the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship; or

(6) who is a member of or affiliated with any organization that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in subparagraph (5).

**SEC. 313(b) [8 USC § 1424(b)]**

(b) The provisions of this section or of any other section of this Act shall not be construed as declaring that any of the organizations referred to in this section or in any other section of this Act do not advocate the overthrow of the Government of the United States by force, violence, or other unconstitutional means.

**SEC. 313(c) [8 USC § 1424(c)]**

(c)[594] The provisions of this section shall be applicable to any applicant for naturalization who at any time within a period of ten years immediately preceding the filing of the application for naturalization or after such filing and before taking the final oath of citizenship is, or has been found to be within any of the classes enumerated within this section, notwithstanding that at the time the application is filed he may not be included within such classes.

**SEC. 313(d) [8 USC § 1424(d)]**

(d) Any person who is within any of the classes described in subsection (a) solely because of past membership in, or past affiliation with, a party or organization may be naturalized without regard to the provisions of subsection (c) if such person establishes that such membership or affiliation is or was involuntary, or occurred and terminated prior to the attainment by such alien of the age of sixteen years, or that such membership or affiliation is or was by operation of law, or was for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes.

**SEC. 313(e) [8 USC § 1424(e)]**

(e)[595] A person may be naturalized under this title without regard to the prohibitions in subsections (a)(2) and (c) of this section if the person—

(1) is otherwise eligible for naturalization;

(2) is within the class described in subsection (a)(2) solely because of past membership in, or past affiliation with, a party or organization described in that subsection;

(3) does not fall within any of the classes described in that subsection; and

(4)[596] is determined by the Director of Central Intelligence, in consultation with the Secretary of Defense

---

594 Subsection (c) was amended by § 407(c) of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

595 Section 313(e) was added by Pub.L. 106-120, 113 Stat. 1606, Dec. 3, 1999.

596 Paragraph (4) was amended by § 373 of Pub.L. 108-177, 117 Stat. 2599, Dec. 13, 2003.

when Department of Defense activities are relevant to the determination, and with the concurrence of the Attorney General and the Secretary of Homeland Security, to have made a contribution to the national security or to the national intelligence mission of the United States.

### INELIGIBILITY TO NATURALIZATION OF DESERTERS FROM THE ARMED FORCES OF THE UNITED STATES

**SEC. 314. [8 USC § 1425]**

A person who, at any time during which the United States has been or shall be at war, deserted or shall desert the military, air, or naval forces of the United States, or who, having been duly enrolled, departed, or shall depart from the jurisdiction of the district in which enrolled, or who, whether or not having been duly enrolled, went or shall go beyond the limits of the United States, with intent to avoid any draft into the military, air, or naval service, lawfully ordered, shall, upon conviction thereof by a court martial or a court of competent jurisdiction, be permanently ineligible to become a citizen of the United States; and such deserters and evaders shall be forever incapable of holding any office of trust or of profit under the United States, or of exercising any rights of citizens thereof.

### ALIEN RELIEVED FROM TRAINING AND SERVICE IN THE ARMED FORCES OF THE UNITED STATES BECAUSE OF ALIENAGE BARRED FROM CITIZENSHIP

**SEC. 315. [8 USC § 1426]**

**SEC. 315(a) [8 USC § 1426(a)]**

(a)[597] Notwithstanding the provisions of section 405(b) but subject to subsection (c), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

[**Annotation**: Section 405(b) declares that unless specifically provided otherwise, a petition for naturalization pending at the time this 1952 Act takes effect shall be heard and determined under the law in effect when the petition was filed.]

**SEC. 315(b) [8 USC § 1426(b)]**

(b) The records of the Selective Service System or of the Department of Defense shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien.

**SEC. 315(c) [8 USC § 1426(c)]**

(c)[598] An alien shall not be ineligible for citizenship under this section or otherwise because of an exemption from training or service in the Armed Forces of the United States pursuant to the exercise of rights under a treaty, if before the time of the exercise of such rights the alien served in the Armed Forces of a foreign country of which the alien was a national.

---

597 Subsection (a) was amended by § 404 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

598 Subsection (c) was added by § 404 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

## REQUIREMENTS AS TO RESIDENCE, GOOD MORAL CHARACTER, ATTACHMENT TO THE PRINCIPLES OF THE CONSTITUTION, AND FAVORABLE DISPOSITION TO THE UNITED STATES[599]

### SEC. 316. [8 USC § 1427]

### SEC. 316(a) [8 USC § 1427(a)]

(a) No person, except as otherwise provided in this title, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

### SEC. 316(b) [8 USC § 1427(b)]

(b) Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the application and the date of any hearing under section 336(a), shall break the continuity of such residence, unless the applicant shall establish to the satisfaction of the Attorney General that he did not in fact abandon his residence in the United States during such period.

[**Annotation:** Section 336(a) provides for a hearing before an immigration officer on a denial of application for naturalization.]

Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship (whether preceding or subsequent to the filing of the application for naturalization) shall break the continuity of such residence, except that in the case of a person who has been physically present and residing in the United States, after being lawfully admitted for permanent residence, for an uninterrupted period of at least one year, and who thereafter is employed by or under contract with the Government of the United States or an American institution of research recognized as such by the Attorney General, or is employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation, or is employed by a public international organization of which the United States is a member by treaty or statute and by which the alien was not employed until after being lawfully admitted for permanent residence, no period of absence from the United States shall break the continuity of residence if—

(1) prior to the beginning of such period of employment (whether such period begins before or after his departure from the United States), but prior to the expiration of one year of continuous absence from the United States, the person has established to the satisfaction of the Attorney General that his absence from the United States for such period is to be on behalf of such Government, or for the purpose of carrying on scientific research on behalf of such institution, or to be engaged in the development of such foreign trade and commerce or whose residence abroad is necessary to the protection of the property rights in such countries of such firm or corporation, or to be employed by a public international organization of which the United States is a member by treaty or

599 Section 316 was amended by §§ 402 and 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

statute and by which the alien was not employed until after being lawfully admitted for permanent resi

(2) such person proves to the satisfaction of the Attorney General that his absence from the United such period has been for such purpose.

The spouse and dependent unmarried sons and daughters who are members of the household of a p qualifies for the benefits of this subsection shall also be entitled to such benefits during the period for v were residing abroad as dependent members of the household of the person.[600]

**SEC. 316(c) [8 USC § 1427(c)]**

(c) The granting of the benefits of subsection (b) of this section shall not relieve the applicant requirement of physical presence within the United States for the period specified in subsection (a) of thi except in the case of those persons who are employed by, or under contract with, the Government of th States. In the case of a person employed by or under contract with Central Intelligence Agency, the requir subsection (b) of an uninterrupted period of at least one year of physical presence in the United States complied with by such person at any time prior to filing an application for naturalization.

**SEC. 316(d) [8 USC § 1427(d)]**

(d) No finding by the Attorney General that the applicant is not deportable shall be accepted as co evidence of good moral character.

**SEC. 316(e) [8 USC § 1427(e)]**

(e) In determining whether the applicant has sustained the burden of establishing good moral character a other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall limited to the applicant's conduct during the five years preceding the filing of the petition, but may tak consideration as a basis for such determination the applicant's conduct and acts at any time prior to that peric

**SEC. 316(f) [8 USC § 1427(f)]**

(f)(1)[601] Whenever the Director of Central Intelligence, the Attorney General and the Commissioner of migration determine that an applicant otherwise eligible for naturalization has made an extraordinary contribu to the national security of the United States or to the conduct of United States intelligence activities, the appli may be naturalized without regard to prohibitions of section 313 of this Act, and no residence within a partic State or district of the Service in the United States shall be required: Provided, That the applicant has continuo resided in the United States for at least one year prior to naturalization: Provided further, That the provision this subsection shall not apply to any alien described in clauses (i) through (v) of section 208(b)(2)(A) of this Ac

[**Annotation:** Section 208(b)(2)(A) describes the following aliens who shall not be granted asylum: (i) an alien who ordered the persecutio any other person; (ii) an alien, having been convicted of a particularly serious crime, constitutes a danger to the US; (iii) there are seri reasons to believe that the alien has committed a serious nonpolitical crime prior to the alien's arrival in the US; (iv) there are grounds regarding the alien as a danger to US security; and (v) the alien is inadmissible due to a belief that the alien seeks to enter the US to com terrorism.]

(2) An applicant for naturalization under this subsection may be administered the oath of allegiance und section 337(a) by any district court of the United States, without regard to the residence of the applica Proceedings under this subsection shall be conducted in a manner consistent with the protection of intelligenc sources, methods and activities.

600 This last sentence referring to the "Spouse and dependent unmarried sons and daughters," was added by sec. 14 of Pub.L. 97-116, 95 Stat. 1611, Dec. 29, 1981.

601 Subsection (f) was originally subsection (g) as added by § 601 of the Intelligence Authorization Act for Fiscal Year 1986, Pub.L. 99-169, Dec. 4, 1985.

(3) The number of aliens naturalized pursuant to this subsection in any fiscal year shall not exceed five. The Director of Central Intelligence shall inform the Select Committee on Intelligence and the Committee on the Judiciary of the Senate and the Permanent Select Committee on Intelligence and the Committee on the Judiciary of the House of Representatives within a reasonable time prior to the filing of each application under the provisions of this subsection.

## TEMPORARY ABSENCE OF PERSONS PERFORMING RELIGIOUS DUTIES[602]

### SEC. 317. [8 USC § 1428]

Any person who is authorized to perform the ministerial or priestly functions of a religious denomination having a bona fide organization within the United States, or any person who is engaged solely by a religious denomination or by an interdenominational mission organization having a bona fide organization within the United States as a missionary, brother, nun, or sister, who (1) has been lawfully admitted to the United States for permanent residence, (2) has at any time thereafter and before filing an application for naturalization been physically present and residing within the United States for an uninterrupted period of at least one year, and (3) has heretofore been or may hereafter be absent temporarily from the United States in connection with or for the purpose of performing the ministerial or priestly functions of such religious denomination, or serving as a missionary, brother, nun, or sister, shall be considered as being physically present and residing in the United States for the purpose of naturalization within the meaning of section 316(a), notwithstanding any such absence from the United States, if he shall in all other respects comply with the requirements of the naturalization law. Such person shall prove to the satisfaction of the Attorney General that his absence from the United States has been solely for the purpose of performing the ministerial or priestly functions of such religious denomination, or of serving as a missionary, brother, nun, or sister.

## PREREQUISITE TO NATURALIZATION; BURDEN OF PROOF[603]

### SEC. 318. [8 USC § 1429]

Except as otherwise provided in this title, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act. The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service. Notwithstanding the provisions of section 405(b), and except as provided in sections 328 and 329 no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act: Provided, That the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this Act, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this title.

---

602 Section 317 was amended by § 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

603 Section 318 was amended by Pub.L. 90-215, 81 Stat. 661, Dec. 18, 1967; and by § 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

section 313: Provided, That nothing contained herein or in any other provision of law shall be construed a conferring United States citizenship retroactively upon such person, or upon any person who was naturalized i accordance with the provisions of section 317(b) of the Nationality Act of 1940, during any period in which suc person was not a citizen.

[**Annotation:** Section 317(b) of the Nationality Act of 1940, repealed by § 403(a) of the INA, is now covered by subsection (c) of this section.]

(2) Such oath of allegiance may be taken abroad before a diplomatic or consular officer of the United State or in the United States before the Attorney General or the judge or clerk of a court described in section 310(b).

(3) Such oath of allegiance shall be entered in the records of the appropriate embassy, legation, consulate court, or the Attorney General, and upon demand, a certified copy of the proceedings, including a copy of th oath administered, under the seal of the embassy, legation, consulate, court, or the Attorney General, shall b delivered to such woman at a cost not exceeding $5, which certified copy shall be evidence of the facts stated therein before any court of record or judicial tribunal and in any department or agency of the Government of the United States.

## SEC. 324(d) [8 USC § 1435(d)]

(d)[613](1) A person who was a citizen of the United States at birth and lost such citizenship for failure to meet the physical presence retention requirements under section 301(b) (as in effect before October 10, 1978), shall, from and after taking the oath of allegiance required by section 337 be a citizen of the United States and have the status of a citizen of the United States by birth, without filing an application for naturalization, and notwithstanding any of the other provisions of this title except the provisions of section 313. Nothing in this subsection or any other provision of law shall be construed as conferring United States citizenship retroactively upon such person during any period in which such person was not a citizen.

(2) The provisions of paragraphs (2) and (3) of subsection (c) shall apply to a person regaining citizenship under paragraph (1) in the same manner as they apply under subsection (c)(1).

[**Annotations:** For a Historical Note to Section 301, **see** APPENDIX XII in this Book.
Section 313 prohibits naturalization of persons who are opposed to government or law, or who favor totalitarian form of government.]

# NATIONALS BUT NOT CITIZENS OF THE UNITED STATES; RESIDENCE WITHIN OUTLYING POSSESSIONS[614]

## SEC. 325. [8 USC § 1436]

A person not a citizen who owes permanent allegiance to the United States, and who is otherwise qualified, may, if he becomes a resident of any State, be naturalized upon compliance with the applicable requirements of this title, except that in applications for naturalization filed under the provisions of this section residence and physical presence within the United States within the meaning of this title shall include residence and physical presence within any of the outlying possessions of the United States.

613 Subsection (d) of § 324 was added by § 103(a) of Pub.L. 103-416, 108 Stat 4305, Oct. 25, 1994, to "take effect on the first day of the first month beginning more than 120 days after the date of the enactment of this Act. [March 1, 1995]"

614 Section 325 was amended by § 407(c) of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.


(2) a certificate of derivative citizenship;

(3) a certificate of naturalization or of citizenship;

(4) a special certificate of naturalization;

(5) a certificate of naturalization or of citizenship, in lieu of one lost, mutilated, or destroyed;

(6) a new certificate of citizenship in the new name of any naturalized citizen who, subsequent to natur tion, has had his name changed by order of a court of competent jurisdiction or by marriage; and declaration of intention.

One such photograph shall be affixed to each such certificate issued by the Attorney General and one sha affixed to the copy of such certificate retained by the Service.

## APPLICATION FOR NATURALIZATION; DECLARATION OF INTENTION[638]

### SEC. 334. [8 USC § 1445]

### SEC. 334(a) [8 USC § 1445(a)]

(a) An applicant for naturalization shall make and file with the Attorney General a sworn application in writi signed by the applicant in the applicant's own handwriting if physically able to write, which application shall be a form prescribed by the Attorney General and shall include averments of all facts which in the opinion of t Attorney General may be material to the applicant's naturalization, and required to be proved under this title. the case of an applicant subject to a requirement of continuous residence under section 316(a) or 319(a), t application for naturalization may be filed up to 3 months before the date the applicant would first otherwise me such continuous residence requirement.

[**Annotations:** Section 316(a) provides for certain residency and character requirements, as well as allegiance to US Constitution and we disposition for good order and happiness of the US, as requirements for naturalization.
Section 319(a) provides for naturalization of battered spouses and children of US citizens, with a lesser permanent residency requirement, years instead of 5 years.]

### SEC. 334(b) [8 USC § 1445(b)]

(b) No person shall file a valid application for naturalization unless he shall have attained the age of eighteen years. An application for naturalization by an alien shall contain an averment of lawful admission for permanent residence.

### SEC. 334(c) [8 USC § 1445(c)]

(c) Hearings under section 336(a) on applications for naturalization shall be held at regular intervals specified by the Attorney General.

[**Annotation:** Section 336(a) provides for a hearing before an immigration officer on a denial of application for naturalization.]

### SEC. 334(d) [8 USC § 1445(d)]

(d) Except as provided in subsection (e), an application for naturalization shall be filed in the office of the Attorney General.

### SEC. 334(e) [8 USC § 1445(e)]

(e) A person may file an application for naturalization other than in the office of the Attorney General, and an oath of allegiance administered other than in a public ceremony before the Attorney General or a court, if the

---

638 Section 334 was amended by §§ 401 and 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990, and by § 305(m)(7) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991, effective as if included in § 407(d) the Immigration Act of 1990, i.e., Nov. 29, 1990.

Attorney General determines that the person has an illness or other disability which—

(1) is of a permanent nature and is sufficiently serious to present the person's personal appearance, or

(2) is of a nature which so incapacitates the person as to prevent him from personally appearing.

SEC. 334(f) [8 USC § 1445(f)]

(f)[639] An alien over 18 years of age who is residing in the United States pursuant to a lawful admission for permanent residence may file with the Attorney General a declaration of intention to become a citizen of the United States. Such a declaration shall be filed in duplicate and in a form prescribed by the Attorney General and shall be accompanied by an application prescribed and approved by the Attorney General. Nothing in this subsection shall be construed as requiring any such alien to make and file a declaration of intention as a condition precedent to filing an application for naturalization nor shall any such declaration of intention be regarded as conferring or having conferred upon any such alien United States citizenship or nationality or the right to United States citizenship or nationality, nor shall such declaration be regarded as evidence of such alien's lawful admission for permanent residence in any proceeding, action, or matter arising under this or any other Act.

## INVESTIGATION OF APPLICANTS; EXAMINATION OF APPLICATIONS[640]

SEC. 335. [8 USC § 1446]

SEC. 335(a) [8 USC § 1446(a)]

(a) Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization. The Attorney General may, in his discretion, waive a personal investigation in an individual case or in such case or classes of cases as may be designated by him.

SEC. 335(b) [8 USC § 1446(b)]

(b)[641] The Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization. For such purposes any such employee so designated is hereby authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena [subpoena] the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any district court of the United States; and any such court may, in the event of neglect or refusal to respond to a subpena [subpoena] issued by any such employee so designated or refusal to testify before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the examination authorized by this subsection shall be admissible as evidence in any hearing conducted by an immigration officer under section 336(a). Any such employee shell, at the examination, inform the applicant of the remedies available to the applicant under section 336.

639 *Subsection (f) was amended and designated as subsection (g) by § 407(d)(12)(E) of the Immigration Act of 1990, Pub.L. 101-649, 104* Stat. 4978, Nov. 29, 1990. However, it was redesignated back as subsection (f) by § 305(d) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991, effective as if included in the Immigration Act of 1990.

640 Section 335 was amended by §§ 401 and 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

641 Subsection (b) was amended by 305(f) of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991, effective as if included in the Immigration Act of 1990.

SEC. 335(c) [8 USC § 1446(c)]

(c) The record of the examination upon any application for naturalization may, in the discretion of the Attorney General, be transmitted to the Attorney General and the determination with respect thereto of the employee designated to conduct such examination shall when made also be transmitted to the Attorney General.

SEC. 335(d) [8 USC § 1446(d)]

(d) The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor.

SEC. 335(e) [8 USC § 1446(e)]

(e) After an application for naturalization has been filed with the Attorney General, the applicant shall not be permitted to withdraw his application, except with the consent of the Attorney General. In cases where the Attorney General does not consent to the withdrawal of the application, the application shall be determined on its merits and a final order determination made accordingly. In cases where the applicant fails to prosecute his application, the application shall be decided on the merits unless the Attorney General dismisses it for lack of prosecution.

SEC. 335(f) [8 USC § 1446(f)]

(f) An applicant for naturalization who moves from the district of the Service in the United States in which the application is pending may, at any time thereafter, request the Service to transfer the application to any district of the Service in the United States which may act on the application. The transfer shall not be made without the consent of the Attorney General. In the case of such a transfer, the proceedings on the application shall continue as though the application had originally been filed in the district of the Service to which the application is transferred.

HEARINGS ON DENIALS OF APPLICATIONS FOR NATURALIZATION[642]

SEC. 336. [8 USC § 1447]

SEC. 336(a) [8 USC § 1447(a)]

(a) If, after an examination under section 335, an application for naturalization is denied, the applicant may request a hearing before an immigration officer.

SEC. 336(b) [8 USC § 1447(b)]

(b) If there is a failure to make a determination under section 335 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

SEC. 336(c) [8 USC § 1447(c)]

(c) The Attorney General shall have the right to appear before any immigration officer in any naturalization proceedings for the purpose of cross-examining the applicant and the witnesses produced in support of the application concerning any matter touching or in any way affecting the applicant's right to admission to citizenship, and shall have the right to call witnesses, including the applicant, produce evidence, and be heard in opposition to, or in favor of, the granting of any application in naturalization proceedings.

SEC. 336(d) [8 USC § 1447(d)]

(d) The immigration officer shall, if the applicant requests it at the time of filing the request for the hearing, issue a subpoena for the witnesses named by such applicant to appear upon the day set for the hearing, but in case such witnesses cannot be produced upon the hearing other witnesses may be summoned upon notice to the Attorney General, in such manner and at such time as the Attorney General may by regulation prescribe. Such subpoenas may be enforced in the same manner as subpoenas under section 335(b) may be enforced.

SEC. 336(e) [8 USC § 1447(e)]

(e) It shall be lawful at the time and as a part of the administration by a court of the oath of allegiance under section 337(a), for the court, in its discretion, upon the bona fide prayer of the applicant included in an appropriate petition to the court, to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.

OATH OF RENUNCIATION AND ALLEGIANCE[643]

SEC. 337. [8 USC § 1448]

SEC. 337(a) [8 USC § 1448(a)]

(a) A person who has applied for naturalization shall, in order to be and before being admitted to citizenship, take in a public ceremony before the Attorney General or a court with jurisdiction under section 310(b) an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the applicant was before a

642 Section 336 was amended by § 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.
643 Section 337 was amended by § 407 of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990.

subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) (A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the Armed Forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law. Any such person shall be required to take an oath containing the substance of clauses (1) through (5) of the preceding sentence, except that a person who shows by clear and convincing evidence to the satisfaction of the Attorney General that he is opposed to the bearing of arms in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1) through (4) and clauses (5)(B) and (5)(C), and a person who shows by clear and convincing evidence to the satisfaction of the Attorney General that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1) through (4) and clause (5)(C). The term "religious training and belief" as used in this section shall mean an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. In the case of the naturalization of a child under the provisions of section 322 of this title the Attorney General may waive the taking of the oath if in the opinion of the Attorney General the child is unable to understand its meaning. The Attorney General may waive the taking of the oath by a person if in the opinion of the Attorney General the person is unable to understand, or to communicate an understanding of, its meaning because of a physical or developmental disability or mental impairment. If the Attorney General waives the taking of the oath by a person under the preceding sentence, the person shall be considered to have met the requirements of section 316(a)(3) with respect to attachment to the principles of the Constitution and well disposition to the good order and happiness of the United States.[644]

[**Annotations:** Section 322 provides for citizenship of children born and residing outside the US, and conditions for acquiring certificate of citizenship.
Section 316(a)(3) provides that the applicant for naturalization has been and is a person of good moral character during the preceding five-year period, attached to the principles of U.S. Constitution, and well disposed to the good order and happiness of the US.]

### SEC. 337(b) [8 USC § 1448(b)]

(b) In case the person applying for naturalization has borne any hereditary title, or has been of any of the orders of nobility in any foreign state, the applicant shall in addition to complying with the requirements of subsection (a) of this section, make under oath in the same public ceremony in which the oath of allegiance is administered, an express renunciation of such title or order of nobility, and such renunciation shall be recorded as a part of such proceedings.

### SEC. 337(c) [8 USC § 1448(c)]

(c)[645] Notwithstanding section 310(b), an individual may be granted an expedited judicial oath administration ceremony or administrative naturalization by the Attorney General upon demonstrating sufficient cause. In determining whether to grant an expedited judicial oath administration ceremony, a court shall consider special circumstances (such as serious illness of the applicant or a member of the applicant's immediate family, permanent disability sufficiently incapacitating as to prevent the applicant's personal appearance at the scheduled ceremony, developmental disability or advanced age, or exigent circumstances relating to travel or employment). If an expedited judicial oath administration ceremony is impracticable, the court shall refer such individual to the Attorney General who may provide for immediate administrative naturalization.

---

644 Subsection (a) was amended to add the last two sentences, for "persons applying for naturalization before, on, or after the date of the enactment of this Act," by § 1 of Pub.L. 106-448, 114 Stat. 1939, Nov. 6, 2000.

645 Subsection (c) was amended by § 102(b)(2) and 305(i) of Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991.

[Annotation: Section 310(b) provides for court authority to administer oaths in naturalization proceedings.]

SEC. 337(d) [8 USC § 1448(d)]

(d) The Attorney General shall prescribe rules and procedures to ensure that the ceremonies conducted by the Attorney General for the administration of oaths of allegiance under this section are public, conducted frequently and at regular intervals, and are in keeping with the dignity of the occasion.

## CERTIFICATE OF NATURALIZATION; CONTENTS[646]

SEC. 338. [8 USC § 1449]

A person admitted to citizenship in conformity with the provisions of this title shall be entitled upon such admission to receive from the Attorney General a certificate of naturalization, which shall contain substantially the following information: Number of application for naturalization; number of certificate of naturalization; date of naturalization; name, signature, place of residence, autographed photograph, and personal description of the naturalized person, including age, sex, marital status, and country of former nationality; location of the district office of the Service in which the application was filed and the title, authority, and location of the official or court administering the oath of allegiance; statement that the Attorney General having found that the applicant had complied in all respects with all of the applicable provisions of the naturalization laws of the United States, and was entitled to be admitted a citizen of the United States of America, thereupon ordered that the applicant be admitted as a citizen of the United States of America; attestation of an immigration officer; and the seal of the Department of Justice.

## FUNCTIONS AND DUTIES OF CLERKS AND RECORDS OF DECLARATIONS OF INTENTION AND APPLICATIONS FOR NATURALIZATION[647]

SEC. 339. [8 USC § 1450]

SEC. 339(a) [8 USC § 1450(a)]

(a)[648] The clerk of each court that administers oaths of allegiance under section 337 shall—

(1) deliver to each person administered the oath of allegiance by the court pursuant to section 337(a) the certificate of naturalization prepared by the Attorney General pursuant to section 310(b)(2)(A)(ii),

(2) forward to the Attorney General a list of applicants actually taking the oath at each scheduled ceremony and information concerning each person to whom such an oath is administered by the court, within 30 days after the close of the month in which the oath was administered,

(3) forward to the Attorney General certified copies of such other proceedings and orders instituted in or issued out of the court affecting or relating to the naturalization of persons as may be required from time to time by the Attorney General, and

(4) be responsible for all blank certificates of naturalization received by them from time to time from the Attorney General and shall account to the Attorney General for them whenever required to do so.

---

646 Section 338 was amended by § 407(c) and (d) of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990; by § 305(j) of Pub.L. 102-232, 105 Stat. 1733, Dec. 12, 1991; and by 104(a) of Pub.L. 103-416, 108 Stat 4305, Oct. 25, 1994, applicable "to persons admitted to citizenship on or after the date of enactment of this Act." This latter amendment effectively eliminated the need for the Attorney General to find that the naturalized person has the intent to reside permanently in the United States.

647 Section 339 was completely revised by § 407(d)(17) of the Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, Nov. 29, 1990. Further, § 408(c) of this amending statute states, "The amendments to section 339 . . . (relating to functions and duties of clerks) shall not apply to functions and duties respecting petitions filed before October 1, 1991."

648 Subsection (a) was amended by § 102(b) of Pub.L. 102-232, 105 Stat. 1735, Dec. 12, 1991, effective 30 days after Dec. 12, 1991.

# Black's Law Dictionary®

## Seventh Edition

**Bryan A. Garner**
Editor in Chief

WEST
GROUP

ST. PAUL, MINN., 1999

a serjeant-at-law was also known as *serviens narrator*. Pl. **narratores** (na-rə-**tor**-eez).

> "The Latin *narrator* and its French equivalent *contour* became technical terms. If an English term was in use, it was perhaps *forspeaker*." 1 Frederick Pollock & Frederic W. Maitland, *The History of English Law Before the Time of Edward I* 215 n.1 (2d ed. 1898).

**narrow-channel rule.** The navigational requirement that a vessel traveling down a slim fairway must keep as near to the fairway wall on the vessel's starboard side as is safe and practicable. 33 USCA § 2009(a)(i).

**narrowly tailored,** *adj.* (Of a content-neutral restriction on the time, place, or manner of speech in a designated public forum) being only as broad as is reasonably necessary to promote a substantial governmental interest that would be achieved less effectively without the restriction; no broader than absolutely necessary. See *designated public forum* under PUBLIC FORUM.

**narrow sea.** (*often pl.*) A sea running between two coasts that are close to each another. • The English Channel, for example, is a narrow sea.

***nasciturus*** (nas-ə-**t**[y]**oor**-əs *or* -**t**[y]**ər**-əs), *n.* [fr. Latin *nascor* "to be born"] *Roman law.* An unborn child.

**NASD.** *abbr.* NATIONAL ASSOCIATION OF SECURITIES DEALERS.

**NASDAQ** (**naz**-dak). *abbr.* NATIONAL ASSOCIATION OF SECURITIES DEALERS AUTOMATED QUOTATION SYSTEM.

***natale*** (nə-**tay**-lee), *n.* [Latin "of or belonging to birth"] *Hist.* The status a person acquires by birth. • For example, if one or both parents of a child were serfs, the child was generally regarded as a serf, and a child born free rarely became a serf. See NATIVUS.

***nati et nascituri*** (**nay**-tI et nas-ə-**t**[y]**oor**-I *or* -**t**[y]**ər**-I), *n. pl.* [Latin "born and to be born"] *Hist.* A person's heirs, near and remote.

***natio*** (**nay**-shee-oh), *n.* [Latin] *Hist.* **1.** A nation. **2.** A group of students. **3.** A native place.

**nation,** *n.* **1.** A large group of people having a common origin, language, and tradition and usu. constituting a political entity. • When a nation is coincident with a state, the term *nation-state* is often used. — Also termed *nationality.*

> "The nearest we can get to a definition is to say that a nation is a group of people bound together by common history, common sentiment and traditions, and, usually (though not always, as, for example, Belgium or Switzerland) by common heritage. A state, on the other hand, is a society of men united under one government. These two forms of society are not necessarily coincident. A single nation may be divided into several states, and conversely a single state may comprise several nations or parts of nations." John Salmond, *Jurisprudence* 136 (Glanville L. Williams ed., 10th ed. 1947).

**2.** A community of people inhabiting a defined territory and organized under an independent government; a sovereign political state. Cf. STATE.

**national,** *adj.* **1.** Of or relating to a nation <national anthem>. **2.** Nationwide in scope <national emergency>.

**national,** *n.* **1.** A member of a nation. **2.** A person owing permanent allegiance to and under the protection of a state. 8 USCA § 1101(a)(21).

***national of the United States.*** A citizen of the United States or a noncitizen who owes permanent allegiance to the United States. 8 USCA § 1101(a)(22). — Also termed *U.S. national*; *U.S. citizen*.

**National Aeronautics and Space Act.** A 1958 federal statute that created the National Aeronautics and Space Administration (NASA), a civilian agency of the federal government whose functions include conducting space research, improving aeronautical travel, building manned and unmanned space vehicles, developing operational space programs, and engaging in other space activities devoted to peaceful purposes for the benefit of all humankind. 42 USCA §§ 2451–2484.

**national association.** See *national bank* under BANK.

**National Association of Realtors.** An association of real-estate brokers and agents promoting education, professional standards, and modernization in areas of real estate such as brokerage, appraisal, and property management. — Abbr. NAR.

**National Association of Securities Dealers.** A group of brokers and dealers empowered by the SEC to regulate the over-the-counter securities market. — Abbr. NASD.

**National Association of Securities Dealers Automated Quotation system.** A computer-

**THE UNITED STATES**
**FEDERAL DISTRICT COURT**
**WASHINGTON, D.C.**

**EXHIBIT 2 OF 3 CONTINUED**

**NOHA CHARLES AUGUSTUS,**
**Petitioner,**

**VERSUS**

**DAVID VENTURELLA, Director HQ-PDU**
**MICHAEL CHERTOFF, Secretary, Dept of Homeland Security**
**FEDERAL REPUBLIC OF NIGERIA, ETAL**
**Respondents.**

______________________________________/

EXHIBIT G

SEE PICTURE ALTHOUGH UNRELATED DEPICTING "JPATS" VICTIMS METHOD OF TRANSPORTATION (JOINT PRISONER APPREHENSION TRANSPORT SYSTEM RUN BY U.S MARSHAL CONVICT AIR " CON AIR")

CRANE-SITTER

# Murder suspect prepares to fight return to Florida

**The man suspected in a Tampa-area woman's strangulation death faced a Georgia judge Tuesday to hear the charges against him.**

BY BERNARD McGHEE
Associated Press

ATLANTA — A Florida murder suspect who perched atop a construction crane for 56 hours said Tuesday he will fight extradition back to the state where he is accused of killing his ex-girlfriend.

Carl Edward Roland, 41, was in Fulton County Superior Court for a hearing to discuss his return to Pinellas County, Fla., where he is charged with strangling Jennifer Gonzalez. The 36-year-old's body was found in a retention pond behind her Oldsmar apartment May 24, the day before Roland climbed the crane.

**HEARING SET**

Judge Richard Hicks set a new hearing in the case for July 11. Roland will wait in an Atlanta jail while Florida officials send an extradition warrant for him. A hearing could be held earlier, depending on brief hearing to say he wanted the warrant instead of waiving the extradition process.

His public defender, Michelle Homier, did not immediately return a phone call seeking comment on Tuesday.

Atlanta police ended the standoff by shocking Roland with a stun gun as he crawled toward an officer for a cup of water early Saturday, after spending more than 56 hours on the construction crane above the city's Buckhead neighborhood. He was lowered to the ground from the 350-foot crane and transported to a hospital where he stayed for nearly two days.

Roland's standoff has led to additional charges of criminal trespassing, reckless conduct and first-degree criminal damage to property in Atlanta.

**ANOTHER CLIMBER**

Another crane climber was arrested in Atlanta on Monday. Thomas Eugene Robinson scaled a crane in the same section of the city as Roland's standoff, authorities said. However, Robinson, 26, came down from his crane early Tuesday, police said.

THIS IS THE EXACT MANERISM THAT CIVIL DETAINEES - FOR IMMIGRATION VIOLATIONS ARE TRANSPORTED ACCROSS UNITED STATES. THEN ARE SUBSEQUENTLY TRANSPORTED TO NIGERIA ON 16 HOUR FLIGHT, HANDS AND WAISTE BOUND (JOINT PRISONER APPREHENSION TRANSPORT SYSTEM) JPATS

# Exhibit T



*Krome Service Processing Center*

U.S. Department of Homeland Security
18201 SW 12th Street
Miami, FL 33194

U.S. Immigration
and Customs
Enforcement

# Interoffice Memorandum

To: FILE

From: M. Finnerty

Date: January 13, 2005

Re: NOHA, Augustus
A29 979 444

Subject is a Nigerian Citizen who first arrived at Krome SPC on 8/12/2004. At the time of arrival, Subject was under a final order of removal. This office began efforts to have the Subject included on an upcoming JPATS flight to Nigeria leaving from Batavia.

A travel document request package was sent to the JPATS Coordination Officer and the Subject was approved for issuance of a document by the Embassy of Nigeria and for inclusion on the JPATS flight. On September 20, 2004, Subject was transferred to Batavia in anticipation of removal on JPATS flight.

Subsequently, this office learned that the Subject was not placed on the Nigerian JPATS flight and on October 7, 2004, the Subject returned to Krome. A follow-up call to officers at Batavia determined that, during an interview with embassy officials while at Batavia, the Subject stated that he had severe back problems. According to officers at Batavia, the embassy decided not to issue until such time as the Subject was treated for back problems.

Based upon the above listed information, this office requested an evaluation of the Subject's condition by the staff of the Public Health Service at Krome. It is believed that this evaluation is pending.